IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DANIEL R. FLETCHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0007 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE COMMISSIONER'S DECISION
AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff DANIEL R. FLETCHER, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED.

I.
THE RECORD

Plaintiff applied for supplemental security income benefits (SSI) and for disability insurance benefits (DIB) under Titles II and XVI of the Social Security Act on February 22, 2002. (Transcript [hereinafter Tr.] 45-48, 224-226, 68). Plaintiff alleges he became disabled on

September 30, 2001 due to a combination of impairments including hepatitis C, a cardiac impairment, stomach bleeding, back problems and obesity. (*Id.*; Plaintiff's Brief at 2).[1] Plaintiff was born February 11, 1949 and possesses a high school degree. (*Id.*; Tr. 65, 86, 239, 284-285). Plaintiff's past relevant work includes concrete work in the construction industry as a cement finisher. (Tr. 60, 286).

Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on January 13, 2003. (Tr. 278-299). On June 27, 2003, ALJ Gary L. Vanderhoof, rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 13-19). The ALJ determined plaintiff has the medically determinable impairments of hepatitis C, coronary artery disease and gastrointestinal bleeding but that such impairments did not "meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 15). The ALJ determined plaintiff could not return to his past relevant work which was categorized as heavy, but that he retained the exertional capacity for the performance of the full range of light work. (Tr. 18, Finding #7). Based upon the Medical Vocational Guidelines, specifically Rule 202.14, the ALJ concluded plaintiff was not under a disability at any time through the date of his decision. (*Id.*, Finding #13).

Upon the Appeals Council's denial of plaintiff's request for review on November 14, 2003, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 5-8). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

---

[1] Plaintiff also relies on his bilateral hearing loss and the loss of his thumb when discussing the issue of the ALJ's failure to address plaintiff's combination of impairments.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis.  Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision.  To this extent, plaintiff presents the following issue:

> Whether the ALJ erred in conclusively relying on the grids for a finding that plaintiff was not disabled where the ALJ did not properly consider all of plaintiff's documented impairments in combination when assessing his RFC and where the record does not justify a conclusion that plaintiff did not suffer from significant nonexertional impairments.

IV.
MERITS

A.
Plaintiff's Hearing Loss

Plaintiff contends the ALJ failed to properly evaluate his hearing impairment and failed to consider it in combination with his other impairments.  As stated in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  A review of plaintiff's medical history indicates he was seen, on October 30, 2002 for an audiology exam.  (Tr. 268).  The results of such exam were as follows, "Pure tone test results revealed a noraml (sic) to moderately severe sensorineural hearing loss in both ears.

Speech reception thresholds were in line with pure tone results.  Speech discrimination scores were good in both ears.  Impedance measures revealed normal tympanograms bilaterally." (*Id.*) Amplification was recommended but it was determined, for unknown reasons, that plaintiff was ineligible for hearing aids through the Veterans Administration (VA). (*Id.*)  Plaintiff was advised that he could contact a private audiologist if he wished to obtain hearing aids. (*Id.*)  The record before the Court does not show whether plaintiff ever contacted a private audiologist or obtained hearing aids.  The October 2002 test and recommendation are the only references to plaintiff's hearing loss contained in the record.

     In his application paperwork, plaintiff does not state he suffers from a hearing loss or that a hearing loss exists to the degree it interferes with his ability to work. (Tr. 58-68, 80-83).  In fact, plaintiff never mentions his hearing loss in the Daily Activity Questionnaire completed by him, and, he specifically affirms his physical problems did not limit his hearing activities. (Tr. 85).  In a medical assessment completed by Dr. Raj Saralaya on April 17, 2002, none of the indicator boxes for ear pain, ear drainage, tinnitus, or hearing loss are checked thus indicating negative symptoms for these ailments. (Tr. 166).  In a residual functional capacity (RFC) assessment completed May 21, 2002, no communicative limitations were established for hearing or speaking. (Tr. 176).  Finally, plaintiff had a representative at his administrative hearing.  The representative questioned plaintiff about his impairments and plaintiff testified he suffered from lightheadedness, shortness of breath, repeated upper gastrointestinal bleeding and blood transfusions, heart attack, hepatitis C, a hiatal hernia and diverticulitis. (Tr. 286-289).  Plaintiff testified the main thing keeping him from work was fatigue and shortness of breath. (Tr. 290-291).  At no time did plaintiff allege his hearing loss prevented him from working.  Nowhere in

plaintiff's medical records is it noted by any physician or nurse that they were unable to communicate with plaintiff.  In short, there is no indication, other than the isolated hearing loss evaluation conducted in October of 2002, that plaintiff's hearing loss affected him at all.

While it is true that the ALJ has a duty to fully develop the record, it cannot be said the ALJ violated this duty in the instant case by failing to discuss plaintiff's hearing impairment, especially in light of the fact that only one isolated medical record refers to the alleged hearing loss and, more importantly, plaintiff never alleged such impairment in all his paperwork or at his administrative hearing.  If a claimant does not reference an impairment in some manner, in writing or verbally, the ALJ is not on notice that any development regarding the unannounced impairment need be made.  Plaintiff's point of error in this regard should fail.

B.
Plaintiff's Combined Impairments

Plaintiff also argues the ALJ erred in his use of the grids because he failed to consider the combined effect of all plaintiff's impairments including nonexertional impairments, specifically, his obesity, his shortness of breath and his fatigue. (Plaintiff's Brief at 10).  It does not appear defendant directly addressed the issue regarding plaintiff's obesity.  Instead, defendant appears to argue the mere fact plaintiff is obese does not render the obesity a disabling condition.  That, as pointed out by plaintiff in his reply brief, however, is not plaintiff's argument.  Instead, plaintiff argues his obesity exacerbates his impairments of fatigue and shortness of breath and that such combination of impairments, which plaintiff contends are non-exertional in nature, precluded use of the grids.

The medical records contain numerous complaints by plaintiff that he suffers from fatigue and shortness of breath and he has consistently complained to his care givers about these

ailments. (Tr. 59, 80, 84-85, 87, 93, 97, 109, 119, 130, 166, 192, 196). The medical records also reflect plaintiff suffers from hepatitis C and recurring upper gastrointestinal bleeds with related anemia. Plaintiff testified to these impairments. (Tr. 289). Plaintiff also stated he was just worn out and didn't feel like doing anything. (Tr. 288). The ALJ refers to one medical record dated April 30, 2002 which stated plaintiff "continues to have some fatigue, but is improving." (Tr. 16 citing Tr. 192). The ALJ also determined plaintiff's complaints were not entirely credible. (Tr. 15). While this issue is relatively close, the ALJ erred by relying on the grids. Fatigue is a non-exertional impairment, and there does not appear to be any doubt that plaintiff suffers from non-exertional fatigue. Whether it is exacerbated by the combined effect of plaintiff's obesity and shortness of breath and whether his fatigue waxes and wanes to the degree plaintiff would be unable to sustain employment, as argued by plaintiff, are issues which should be further addressed, either with a Vocational Expert or in some other manner. The testimony of a Medical Expert might be required to illuminate the degree of fatigue that one would expect from a person suffering with multiple blood related and blood loss issues. Nowhere in his analysis does the ALJ appear to consider the effects of plaintiff's fatigue. "Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). The existence of a non-exertional impairment precludes use of the Medical-Vocational Guidelines, "the grids." As stated in *Smith v. Sullivan*, 799 F.Supp. 659, 662 (N.D. Tex. 1992), "However, if the Plaintiff suffers from non-exertional or a combination of exertional and non-exertional impairments the Secretary may not utilize the Medical-Vocational Guidelines. The Secretary may then sustain his

burden of proof by producing expert vocational testimony concerning the existence and availability of jobs in the national economy the Plaintiff can perform, 20 C.F.R. Part 404, Subpart P, App. 2, Sec. 200.00(e)(1) and (2), *Harrell v. Bowen,* 862 F.2d 471 (5th Cir.1988), *Fields v. Bowen,* 805 F.2d 1168 (5th Cir.1986), and *Martin v. Heckler,* 748 F.2d 1027 (5th Cir.1984)."

In this case, the ALJ did not make any finding that plaintiff's fatigue and shortness of breath did not constitute non-exertional impairments or did not significantly affect plaintiff's residual capacity. There is simply no discussion of plaintiff's fatigue other than the ALJ's statement that plaintiff continues to have some fatigue but is improving and has no chest pain. (Tr. 16). In light of plaintiff's documented complaints of fatigue, which were not found to be without credibility[2], such fatigue should have been addressed and a determination made as to the extent of plaintiff's fatigue, shortness of breath and obesity and the effect of such on his RFC.

As discussed briefly above, plaintiff argues the ALJ erred by failing to consider whether plaintiff could *maintain* employment. Upon remand, if it is plaintiff's position that his fatigue, shortness of breath and combination of all impairments keeps him from maintaining employment, plaintiff should present that issue and the ALJ should address the issue by making explicit findings regarding plaintiff's condition(s) and their combined effect on his ability to obtain and *maintain* substantial gainful employment.

---

[2] Determinations as to the credibility of witnesses are recognized to be determinations for the Commissioner. However, there must be some basis upon which to base an adverse credibility finding. This plaintiff, who has an established work record, does not appear to be a non-believable witness. The ALJ certainly does not reference any particular basis upon which he finds plaintiff not credible.

V.
RECOMMENDATION

It is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be REVERSED and REMANDED for further administrative proceedings as set forth herein.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 15th day of February 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United

States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).